**WHITE & CASE LLP**
Roberto Kampfner (CA Bar No. 179026)
555 South Flower Street, Suite 2700
Los Angeles, CA 90071
Telephone: (213) 620-7700
Email: rkampfner@whitecase.com

– and –

Sean Gorman (*pro hac vice forthcoming*)
609 Main Street, Suite 2900
Houston, Texas 77002
Telephone: (713) 496-9700
Email: sean.gorman@whitecase.com

– and –

Fan B. He (*pro hac vice forthcoming*)
Southeast Financial Center, Suite 4900
200 South Biscayne Blvd.
Miami, FL 33131
Telephone: (305) 371-2700
Email: fhe@whitecase.com

*Counsel for Vanguard National Trailer Corporation and Vanguard Reefer Trailer, Inc.*

**IN THE UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

DAIMLER TRUCK FINANCIAL SERVICES USA LLC,

*Plaintiff,*

v.

VANGUARD NATIONAL TRAILER CORPORATION and CIMC REEFER TRAILER, INC., a/k/a VANGUARD REEFER TRAILER, INC.,

*Defendants.*

Case No. 2:26-cv-3785

**DEFENDANTS' ANSWER TO PLAINTIFF'S COMPLAINT FOR: (1) FRAUD, (2) NEGLIGENT MISREPRESENTATION, (3) DECLARATORY JUDGMENT, (4) CONSPIRACY, AND (5) MONEY HAD AND RECEIVED AND COUNTERCLAIMS**

## DEFENDANTS' ANSWER TO THE COMPLAINT

Defendants Vanguard National Trailer Corporation ("**Vanguard**") and Vanguard Reefer Trailer, Inc. ("**VRTI**,") (collectively, "**Defendants**" or the "**Vanguard Parties**"), by and through their undersigned counsel, hereby answer the complaint (the "**Complaint**")[1] filed by plaintiff Daimler Truck Financial Services USA LLC ("**Daimler**" or "**Plaintiff**") as follows. Unless expressly admitted, all allegations are denied.

## INTRODUCTION

Daimler's complaint is without merit. The Vanguard Parties are well-established manufacturers of dry van and reefer trailers. The Vanguard Parties sold dry van trailers and refrigerated trailers to the KAL Entities in the ordinary course of business and consistent with customary industry practice. Unbeknown to the Vanguard Parties, the KAL Entities were engaged in a massive fraud that will ultimately result in hundreds of millions of dollars of losses for the Vanguard Parties and multiple lenders, including Daimler and many other financial institutions. The fraud involved diverting funds intended to pay for trailers for unknown purposes, double pledging trailers, switching VIN numbers to abscond with trailers, illegally transporting trailers to Canada and various other acts of malfeasance. The Vanguard Parties have lost well over $24 million as a result of the fraud perpetrated by the KAL Entities upon them.

There is little doubt that Daimler is also a victim of the fraud perpetrated by the KAL Entities. Most importantly, the KAL Entities did not use the proceeds of many of Daimler's loans for their intended purposes. Instead of using such proceeds to pay the Vanguard Parties for trailers, those funds were diverted elsewhere. In addition, many of the trailers financed by Daimler cannot be located, were double pledged in the United States or were illegally transported to Canada where

[1] Capitalized terms not otherwise defined shall have the meanings ascribed to them in the Complaint.

they were double pledged to Royal Bank of Canada. None of this is the fault of the Vanguard Parties.

Perhaps stung by its failure to properly police its loans and purported collateral, or otherwise identify the fraud perpetrated by the KAL Entities, Daimler has filed this meritless Complaint to try to recoup its losses from the Vanguard Parties. It cannot do so. The Vanguard Parties have no obligation to indemnify Daimler for its inability to police its loans and purported collateral. To be clear, the Vanguard Parties did nothing more than sell trailers to the KAL Entities consistent with customary business practices and have never colluded or acted in concert with the KAL Entities to defraud Daimler or anyone else in any manner whatsoever.

Importantly, the malfeasance of the KAL Entities, including the failure to pay for trailers and the double pledging of collateral, has created disputes among the creditors of the KAL Entities concerning the priority of their various interests in Vanguard Parties' trailers. But that is exactly what these disputes are—priority disputes, not fraud. As the Court will see in the counterclaims set forth herein, the Vanguard Parties believe that they—not Daimler—have the superior interest in certain disputed trailers. Whether the Vanguard Parties are right or wrong regarding the priority of their interests, it is clear that the Vanguard Parties committed no fraud whatsoever. Daimler's Complaint is without merit.

## ANSWER

## PLAINTIFF'S PRELIMINARY STATEMENT

### I. Customary New Vehicle Financing

1. The allegations consist of Plaintiff's arguments and characterization of the case, to which no response is required. To the extent a response is required, Defendants deny the allegations.

2. The allegations consist of Plaintiff's arguments and characterization of the case, to which no response is required. To the extent a response is required, Defendants admit the allegations.

## II. The Vanguard Parties and Their Fraudulent Scheme

3. The allegations set forth legal arguments or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations.

a. Admitted.

b. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 3.b, and on that basis deny them.

c. Defendants deny the allegations.

d. Admitted.

e. The allegations set forth legal arguments or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations, except that the Vanguard Parties retained title to all trailers sold to KAL Entities until the trailers were paid in full.

f. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 3.f, and on that basis deny them.

g. Defendants deny the allegations.

h. The allegations set forth legal arguments or legal conclusions to which no response is required. To the extent a response is required, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 3.h, and on that basis deny them.

4. Defendants deny the allegations.

5. Defendants deny the allegations, except admit that KAL Trailers had not paid the Vanguard Parties and did not use all of the Daimler loan proceeds to pay the Vanguard Parties.

6. Defendants deny the allegations.

7. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 7, and on that basis deny them.

8. Defendants deny the allegations.

9. The allegations set forth legal arguments or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations.

10. The allegations set forth legal arguments or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations.

**III. King Country**

11. Defendants deny the allegations, except admit that Defendants cancelled the delivery of the Never Delivered Trailers and repossessed the Repossessed Trailers.

12. Defendants deny the allegations, except admit that Defendants resold the Repossessed Trailers and Never Delivered Trailers to King Country.

13. The allegations set forth legal arguments or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations.

## JURISDICTION AND VENUE

14. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 14, and on that basis deny them, except Defendants admit that the amount in controversy exceeds $75,000.

15. Admitted.

16. Admitted.

## THE PARTIES

17. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 17, and on that basis deny them.

18. Admitted.

19. Defendants deny the allegations. VRTI's name is Vanguard Reefer Trailer, Inc. and its registered agent is Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808.

## FACTUAL BACKGROUND

### I. The Vanguard Parties

20. Defendants admit the allegations.

### II. The KAL Entities and Big Rig Entities

21. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 21, and on that basis deny them.

22. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 22, and on that basis deny them.

23. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 23, and on that basis deny them.

24. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 24, except admit that KAL Trailers and KAL Freight filed bankruptcy proceedings with the U.S. Bankruptcy Court for the Southern District of Texas on December 5, 2024, and their plan of liquidation was confirmed.

### III. Daimler

25. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 25, and on that basis deny them.

### IV. King Country

26. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 26, and on that basis deny them.

### V. Industry Standard Vehicle Finance Transactions

27. Defendants deny the allegations.

28. Defendants deny the allegations.

## VI. Summary of the Fraudulent Scheme

29. Admitted.

30. Defendants deny the allegations.

31. Defendants deny the allegations.

32. Defendants deny the allegations.

33. Defendants deny the allegations.

34. Defendants deny the allegations.

35. Defendants deny the allegations.

## VII. The Vanguard Parties' MCOs

36. Defendants respectfully refer the Court to the MCO copies for their complete and accurate contents, and deny any characterization, interpretation, or implication by Plaintiff inconsistent therewith.

## VIII. The KAL Entities' Bankruptcies and the Big Rig Entities' Insolvency Proceedings

37. Defendants admit that the KAL Entities filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code on December 5, 2024. Defendants deny all other allegations set forth in paragraph 37.

38. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 38, and on that basis deny them.

39. Defendants respectfully refer the Court to the Settlement Term Sheet Order for its complete and accurate content, and deny any characterization, interpretation, or implication by Plaintiff inconsistent therewith.

## IX. VRTI's Wrongful Sale of Daimler Collateral to King Country

40. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 40, and on that basis deny them.

41. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 41, and on that basis deny them.

42. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 42, and on that basis deny them.

43. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 43, and on that basis deny them.

## First Cause of Action
## (Common Law Fraud – Against All Defendants)

44. Defendants incorporate and restate their answers to each of the preceding paragraphs as if set forth fully herein.

45. Defendants deny the allegations.

46. Defendants deny the allegations.

47. Defendants deny the allegations.

48. Defendants deny the allegations.

49. Defendants deny the allegations.

50. Defendants deny the allegations.

51. The allegations consist of Plaintiff's arguments and characterization of the case, to which no response is required. To the extent a response is required, Defendants deny the allegations.

## Second Cause of Action
## (Negligent Misrepresentation – Against All Defendants)

52. Defendants incorporate and restate their answers to each of the preceding paragraphs as if set forth fully herein.

53. Defendants deny the allegations.

54. Defendants deny the allegations.

55. Defendants deny the allegations.

56. Defendants deny the allegations.

57. Defendants deny the allegations.

**Third Cause of Action**
**(Declaratory Judgment – Against All Defendants)**

58. Defendants incorporate and restate their answers to each of the preceding paragraphs as if set forth fully herein.

59. The allegations set forth legal arguments or legal conclusions to which no response is required.

60. Defendants deny the allegations.

61. The allegations set forth legal arguments or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations.

**Fourth Cause of Action**
**(Conspiracy – Against All Defendants)**

62. Defendants incorporate and restate their answers to each of the preceding paragraphs as if set forth fully herein.

63. Defendants deny the allegations.

64. Defendants deny the allegations.

65. Defendants deny the allegations.

66. Defendants deny the allegations.

67. Defendants deny the allegations.

**Fifth Cause of Action**
**(Money Had and Received – Against VRTI Only)**

68. Defendants incorporate and restate their answers to each of the preceding paragraphs as if set forth fully herein.

69. Defendants deny the allegations.

70. Defendants deny the allegations.

71. The allegations set forth legal arguments or legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations.

## ANSWER TO PRAYER FOR RELIEF

72. Paragraphs 1–5 of the Prayer for Relief state the relief Plaintiffs seek, to which no response is required. To the extent that a response is required, Defendants deny any and all allegations contained in Plaintiff's Prayer for Relief, and deny that Plaintiff is entitled to any of the relief sought or any other relief.

## DEFENSES AND AFFIRMATIVE DEFENSES

73. Without assuming the burden of proof or persuasion, and without waiving their right to assert any claims or defenses at such time and to such extent as discovery and factual developments establish a basis therefor, Defendants assert the defenses and affirmative defenses below with respect to the causes of action alleged in the Complaint.

74. Defendants reserve the right to: (a) amend or supplement this Answer, their defenses and affirmative defenses, and all other pleadings; and (b) assert (i) any and all additional defenses and affirmative defenses if discovery shows that such defenses would be appropriate, and (ii) any cross-claims, counterclaims, and third-party claims if and when they become appropriate.

**FIRST DEFENSE**
**(Failure to State a Claim)**

75. The Complaint fails to state a claim upon which relief can be granted, including, but not limited to, the failure of the Complaint to meet the standards for pleading set forth by (a) the

United States Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), (b) Rule 12(b)(6) of the Federal Rules of Civil Procedure, and/or (c) Rule 9(b) of the Federal Rules of Civil Procedure.

**SECOND DEFENSE**
**(Failure to Mitigate)**

76. Plaintiff's claims are barred, in whole or in part, by their failure to mitigate damages. Despite the Vanguard Parties' repeated requests, Daimler unreasonably refused to cooperate and instead chose to maintain void liens on the Vanguard Trailers and Unpaid VRTI Trailers, unnecessarily compounding its own alleged losses.

**THIRD DEFENSE**
**(Laches)**

77. Plaintiff's claims are barred, in whole or in part, by the doctrine of laches. Daimler had actual or constructive knowledge of the KAL Entities' financial misconduct, the diversion of loan proceeds, and the Vanguard Parties' title to the Vanguard Trailers and Unpaid VRTI Trailers well before initiating this litigation, but unreasonably delayed in bringing this action to the prejudice of the Vanguard Parties.

**FOURTH DEFENSE**
**(Estoppel)**

78. Plaintiff's claims are barred, in whole or in part, by the doctrine of estoppel. Daimler, as a sophisticated lender operating in the trailer financing industry, was fully aware that original MCOs are transferred to customers only once a manufacturer has been paid in full. Daimler repeatedly extended financing to the KAL Entities across numerous transactions based on that practice, and is estopped from characterizing the Vanguard Parties' deliver of copies of MCOs as fraudulent misrepresentation.

**FIFTH DEFENSE**
**(Statute of Limitations)**

79. Plaintiff's claims are barred, in whole or in part, by the applicable statute of limitations. Plaintiff's claim for fraud is subject to a three-year limitations period under California law, and Plaintiff's claim for negligent misrepresentation and money had and received are subject to a two-year limitations period under California law. To the extent any of the acts, omissions, or transactions alleged in the Complaint occurred outside of the applicable limitations period(s), such claims are barred.

**SIXTH DEFENSE**
**(Waiver, Unclean Hands, and Acquiescence)**

80. Plaintiff's claims are barred, in whole or in part, by the equitable doctrines of waiver, unclean hands, and acquiescence. Daimler repeatedly extended financing to the KAL Entities despite actual or constructive knowledge of the applicable industry practices governing MCO delivery and title transfer, failed to properly police its loans and purported collateral, and now seeks to shift the consequences of its own oversight failures onto the Vanguard Parties, who were themselves victims of the very fraud perpetrated by the KAL Entities.

## COUNTERCLAIM

1. The Vanguard Parties (the "**Counterclaim Plaintiffs**"), by and through their undersigned counsel, for their counterclaim against Daimler (the "**Counterclaim Defendant**") hereby allege as follows:

**THE PARTIES**

2. The Counterclaim Plaintiffs incorporate by reference as if fully set forth herein allegations about the Counterclaim Defendant in Paragraph 17 above.

3. The Counterclaim Plaintiffs incorporate by reference as if fully set forth herein allegations about Counterclaim Plaintiff Vanguard in Paragraph 18 above.

4. Counterclaim Plaintiff VRTI is a company incorporated in Delaware under the name Vanguard Reefer Trailer, Inc. and its registered agent is Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808.

## JURISDICTION AND VENUE

5. On information and belief, the Court has subject matter jurisdiction over Defendants' counterclaim under 28 U.S.C. §§ 1332, 1367.

6. The Court has personal jurisdiction over the Counterclaim Defendant because Daimler has purposefully availed itself of the privileges of conducting business in California and the Vanguard Parties' claims arise out of or relate to Daimler's conduct in this state.

7. Venue in this District is proper under 28 U.S.C. § 1391(b) because a substantial part of the events alleged herein that give rise to the claims occurred in this judicial district.

8. Independently, the Counterclaim Defendant consented to personal jurisdiction and venue in this District when it filed its Complaint.

## FACTUAL ALLEGATIONS

### I. The KAL Entities' Malfeasance Against the Vanguard Parties

9. Vanguard and VRTI manufacture and sell dry van and refrigerated trailers and related parts. Several years ago, Vanguard and VRTI began selling refrigerated and dry van trailers and related equipment to the KAL Entities pursuant to certain purchase orders, invoices, and contracts (the "**Sale Agreements**"). Specifically, Vanguard manufactured and sold dry van trailers to KAL Trailers, and VRTI manufactured and sold refrigerated or reefer trailers to KAL Trailers. KAL Trailers' obligations to Vanguard and VRTI under the Sale Agreements were guaranteed by KAL Freight.

10. In the ordinary course of business and consistent with industry practice, Vanguard and VRTI entered into Sale Agreements with KAL Trailers for the purchase of trailers. Vanguard, VRTI and KAL Trailers agreed, as reflected in the Terms & Conditions of the Sale Agreements,

that title to the trailers would remain with Vanguard and/or VRTI until KAL Trailers had fully paid for the trailers. Consistent with customary industry practice, after an ordered trailer had been manufactured, the Vanguard Parties provided KAL Trailers with copies of the manufacturer's certificate of origin (or "**MCO**") for such trailer. An MCO is an official document issued by a vehicle manufacturer, in this case the Vanguard Parties. The MCO acts as a new vehicle's "birth certificate." It verifies that the vehicle was built to safety standards and is used to establish ownership for the initial registration. There is only one original MCO, and MCOs are usually printed on special paper bearing a watermark that becomes visible when the MCO is copied. The watermark is conspicuous, appears in several locations on the face of the copy of the MCO and usually states "void". It is critical for copies of an MCO to be readily identifiable as copies and the original MCOs to prevent confusion as to who initially owns a vehicle.

11. In the trailer industry, sales on credit typically occur as follows. First, a customer places an order for a trailer and the manufacturer begins to assemble the requested trailer. Second, an original MCO is produced identifying the trailer by VIN number and the customer purchasing the trailer. The original MCO, however, is **not** delivered to the customer. Instead, a copy of the MCO, containing a clear and conspicuous watermark reading "void" is delivered to the customer. Third, the customer can use copies of the MCO to obtain temporary license plates for the trailer and to obtain the financing required to purchase the trailer from the manufacturer. Financing parties typically consider copies of MCOs sufficient for financing purposes because they establish that a trailer has been produced and that the original MCO will be transferred by the manufacturer to the customer once the manufacturer has been paid. Once the financing is obtained, the customer delivers the proceeds to the manufacturer and pays for the trailer. Once paid, the manufacturer sends the original MCO to the customer, thereby transferring title. The customer, as holder of the original MCO, is now authorized to obtain an official title to the vehicle from the state. This title will, in turn, note the financing source as the lien holder on the vehicle. At the end of the day, the

manufacturer is paid in full, the customer has title to the trailer, and the financing source has a recorded lien on the trailer it financed. This process has proven reliable and effective for many years. As noted above, this is customary procedure used in the trailer industry.

12. Between 2022 and 2023, Vanguard manufactured and delivered the dry van trailers listed on **Exhibit A** to KAL Trailers (the "**Vanguard Trailers**"). In connection with these sales, Vanguard produced MCOs for the trailers but did **not** deliver any original MCOs to KAL Trailers. Instead, consistent with industry practice (as described above), Vanguard delivered copies of the relevant MCOs to KAL Trailers. Upon information and belief, KAL Trailers obtained financing to purchase the Vanguard Trailers from Daimler, but did not use the proceeds of the financing for the intended purpose of paying for the Vanguard Trailers. Instead, those proceeds were diverted for unknown purposes. KAL Trailers has never paid for the Vanguard Trailers and, accordingly, has never received the original MCOs in respect of those trailers.

13. During this same time period, VRTI manufactured the reefer trailers listed on **Exhibit B** for KAL Trailers (the "**Unpaid VRTI Trailers**"). In connection with these sales, Vanguard produced original MCOs for the Unpaid VRTI Trailers. With the exception of five trailers, VRTI did not deliver original MCOs to KAL Trailers. Under the terms of the Sales Agreements, title to trailers transfers to KAL Trailers once it pays for the trailers in full and not upon delivery of the original MCOs. KAL Trailers never paid VRTI for the Unpaid VRTI Trailers, including those five trailers for which the original MCOs were delivered to KAL Trailers. Thus, title to the Unpaid VRTI Trailers remained at all times with VRTI.

14. Except for five trailers, VRTI did **not** deliver any originals to KAL Trailers. Instead, it delivered copies of these MCOs to KAL Trailers, consistent with industry practice (as described above). Upon information and belief, KAL Trailers obtained financing to purchase the Unpaid VRTI Trailers from Daimler, but did not use the proceeds of the financing for the intended purpose of paying for the Unpaid VRTI Trailers. Instead, those proceeds were diverted for unknown

purposes. KAL Trailers has never paid for the Unpaid VRTI Trailers and, accordingly, has never received the original MCOs in respect of those trailers.

15. Under the Sales Agreements, title to the Vanguard Trailers and Unpaid VRTI Trailers does not transfer to the KAL Entities until the Vanguard Parties have received full payment therefor. The Vanguard Parties have never been paid for the Vanguard Trailers and the Unpaid VRTI Trailers. Accordingly, per the terms of the Sales Agreements, title to such trailers resides with the Vanguard Parties.

16. Under the California Vehicle Code, title to a vehicle is not transferred until the transferor "has made proper endorsement and delivery of the certificate of ownership to the transferee as provided in this code . . ." Cal. Vehicle Code § 5600. The Vanguard Parties were never paid for the Vanguard Trailers and Unpaid VRTI Trailers and, accordingly, never delivered original MCOs to the KAL Entities in respect of such trailers (except for five trailers discussed above). As a result, title to the VRTI Trailers and the Unpaid VRTI Trailers resides with the Vanguard Parties. In violation of California law, the KAL Entities obtained titles to the Vanguard Trailers and the VRTI Unpaid Trailers despite never paying for the trailers and not receiving original MCOs for nearly all trailers. These titles are fraudulent and void.

17. Section 2-703 of the Uniform Commercial Code permits a seller to exercise certain remedies if it is not paid for goods. These remedies include canceling delivery of the goods in question, reselling the goods in question to a third party and canceling the underlying sales contracts in respect of such goods. In this case, as a result of the failure of the KAL Entities to pay for the Vanguard Trailers and Unpaid VRTI Trailers, the Vanguard Parties exercised their rights under Section 2-703 of the Uniform Commercial Code to, among other things, cancel delivery of some Unpaid VRTI Trailers and cancel the Sales Agreements in respect of all Vanguard Trailers and Unpaid VRTI Trailers. In addition, and also consistent with its rights under Section 2-703 of the

Uniform Commercial Code, VRTI resold the Unpaid VRTI Trailers listed on **Exhibit C** to a third party known as King Country after canceling the Sales Agreements.

18. The Vanguard Parties estimate that the outstanding invoices for the Vanguard Trailers and Unpaid VRTI Trailers total approximately $24.3 million.

## II. <u>The KAL Entities' Bankruptcy Cases</u>

19. On December 5, 2024, KAL Trailers and KAL Freight filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code with the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**"), Case No. 24-90614 (CML) (the "**Bankruptcy Cases**"). The KAL Entities' plans of liquidation have been confirmed and became effective on April 18, 2025.

20. In connection with the KAL Entities' Chapter 11 cases, the Vanguard Parties asserted claims against the KAL Entities for unpaid amounts for the Vanguard Trailers and Unpaid VRTI Trailers. The Vanguard Parties also commenced an adversary proceeding in the Bankruptcy Cases to assert their ownership interest in the Vanguard Trailers and Unpaid VRTI Trailers, recover their trailers, unpaid amounts and damages related thereto, and void liens the KAL Entities had purportedly granted to various lenders, including Daimler.

21. Nevertheless, Daimler sought and obtained orders from the Bankruptcy Court terminating the automatic stay and authorizing Daimler to take possession of all of its purported collateral, including purported collateral in the possession of third parties such as Vanguard and VRTI. *See* Case No. 24-90614, Docket Nos. 762 and 770. Armed with those orders, and with full knowledge of the Vanguard Parties' competing title claims, Daimler proceeded to repossess certain of the Vanguard Trailers and Unpaid VRTI Trailers. Those trailers are and have always been the property of the Vanguard Parties.

## III. <u>Daimler</u>

22. Upon information and belief, Daimler may have extended credit to the KAL

Entities for the purpose of purchasing the Vanguard Trailers and the Unpaid VRTI Trailers. As security for this purported financing, Daimler may have received purported security interests and liens in the Vanguard Trailers and the Unpaid VRTI Trailers. Certain of these liens may be recorded on titles the KAL Entities fraudulently obtained in respect of the Vanguard Trailers and Unpaid VRTI Trailers. Daimler's purported security interests and liens to secure the financing provided to the KAL Entities are derivative of the interests of the KAL Entities in the Vanguard Trailers and Unpaid VRTI Trailers. The KAL Entities did not use the proceeds of Daimler's purported financing to pay for the Vanguard Trailers and Unpaid VRTI Trailers and the KAL Entities did not otherwise pay for such trailers. As a result, title to the Vanguard Trailers and Unpaid VRTI Trailers never passed to the KAL Entities. Among other things, the applicable Sales Agreements provide that title to the Vanguard Trailers and Unpaid VRTI Trailers does not pass until the Vanguard Parties have been paid in full. Further, the Vanguard Parties did not deliver original MCOs to the KAL Entities in respect of the Vanguard Trailers and Unpaid VRTI Trailers, as required by law to transfer title. In addition, the Vanguard Parties exercised their remedies under Section 2-703 of the Uniform Commercial Code to cancel the underlying sales transactions in respect of Vanguard Trailers and Unpaid VRTI Trailers. Accordingly, the KAL Entities never obtained title to the Vanguard Trailers and Unpaid VRTI Trailers and Daimler's security interests and liens in the Vanguard Trailers and Unpaid VRTI Trailers (which are derivative of the interests of the KAL Entities) never attached to the Vanguard Trailers and Unpaid VRTI Trailers and are null and void.

23. Notwithstanding the foregoing, Daimler has refused to acknowledge that it has no interest in the Vanguard Trailers and Unpaid VRTI Trailers. To the contrary, Daimler has refused to cooperate with the Vanguard Parties in releasing its void liens on the Vanguard Trailers and Unpaid VRTI Trailers, which has prevented the Vanguard Parties from mitigating damages and has resulted in substantial damage to the Vanguard Parties. Indeed, Daimler has even refused to

permit the Vanguard Parties to sell the Unpaid VRTI Trailers to third parties to mitigate damages, even on the condition that the proceeds of sale be placed in escrow pending a determination of the interests of the Vanguard Parties and Daimler in the applicable trailers. Daimler's unreasonable behavior has materially harmed the Vanguard Parties.

## FIRST COUNTERCLAIM

## Declaratory Judgment That the Vanguard Parties Have Title to the Vanguard Trailers and Unpaid VRTI Trailers and that Daimler's Security Interests and Liens are Void

24. The Vanguard Parties incorporate and reallege each of the preceding paragraphs as if fully set forth herein.

25. There is an actual controversy between the Vanguard Parties and Daimler concerning the legal ownership of, and security interests with respect to, certain Vanguard Trailers and Unpaid VRTI Trailers that are allegedly subject to Daimler's purported liens. This substantial controversy is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

26. Based on the terms of the Sale Agreements between the Vanguard Parties and KAL Trailers, California law and the Uniform Commercial Code, the Vanguard Parties have at all relevant times been the owners of the title to, and have had the right to possession of, each of the Vanguard Trailers and the Unpaid VRTI Trailers, including any such trailers purportedly subject to Daimler's disputed liens. Among other things, the Vanguard Parties did not provide any original MCOs to the KAL Entities for the Vanguard Trailers and Unpaid VRTI Trailers (except for five of the Unpaid VRTI Trailers, *supra* ¶ 11), including any such trailers purportedly subject to Daimler's disputed liens. Further, under the Sales Agreements, title to the Vanguard Trailers and Unpaid VRTI Trailers does not pass to the KAL Entities until the Vanguard Parties are paid in full for the relevant trailers. No such payments were made. Further, the Vanguard Parties canceled all sales contracts relating to the Vanguard Trailers and Unpaid VRTI Trailers pursuant to Section 2-703 of the Uniform Commercial Code. Therefore, title to the Vanguard Trailers and Unpaid VRTI Trailers

has remained with the Vanguard Parties and never passed to the KAL Entities. Daimler's security interests and liens, at best, only attach to the interests of the KAL Entities in the Vanguard Trailers and Unpaid VRTI Trailers. Since the KAL Entities have no interests in such trailers, all security interests and liens granted to Daimler thereon are void.

27. Based upon the foregoing, pursuant to 28 U.S.C. § 2201, the Vanguard Parties are entitled to a declaration from this Court that Vanguard and VRTI are the owners and lawful title holders of the Vanguard Trailers and Unpaid VRTI Trailers and that Daimler has no security interests or liens in such trailers.

**SECOND COUNTERCLAIM**
**Conversion (Under California Law)**

28. The Vanguard Parties incorporate and reallege each of the preceding paragraphs as if fully set forth herein.

29. At all times relevant hereto, Vanguard and VRTI were the lawful owners of the Vanguard Trailers and Unpaid VRTI Trailers as a result of the KAL Entities' failure to pay for such trailers and unlawfully obtaining title to the trailers with copies of the MCO, and the Vanguard Parties' canceling the Sale Agreements under Section 2-703 of the Uniform Commercial Code. Notwithstanding Vanguard's and VRTI's lawful ownership of the Vanguard Trailers and Unpaid VRTI Trailers, Daimler refused to release its void liens on Vanguard Trailers and Unpaid VRTI Trailers. Instead, it alleged that its liens are valid and prevented the Vanguard Parties from selling the Unpaid VRTI Trailers to third parties to mitigate damages. It also repossessed certain Vanguard Trailers it purportedly has liens on. In doing so, Daimler exercised wrongful dominion and control over personal property that is and has always been the lawful property of Vanguard Parties and caused material harm to the Vanguard Parties. Under California law, Daimler's conduct constitutes conversion of the Vanguard Parties' property.

30. As a direct and proximate result of Daimler's repossession of the trailers, the Vanguard Parties have suffered damages and are entitled to recover from Daimler damages in an amount to be determined at trial, including but not limited to (a) the value of the trailers it repossessed; (b) the lost profits that Vanguard Parties would have realized from the sale or lease of those trailers; and (c) any additional consequential damages flowing from such wrongful repossession.

**THIRD COUNTERCLAIM**
**Money Had and Received**

31. The Vanguard Parties incorporate and reallege each of the preceding paragraphs as if fully set forth herein.

32. To the extent that Daimler received money from the sale of any of the Vanguard Trailers and Unpaid VRTI Trailers that it repossessed, the money that Daimler received from such sales belongs to the Vanguard Parties as the legitimate title holders of such trailers and Daimler is therefore indebted to the Vanguard Parties for money had and received by Daimler for the use of the Vanguard Parties.

33. The Vanguard Parties seek damages from Daimler in the amount of money Daimler received from the resale of the repossessed trailers.

**FOURTH COUNTERCLAIM**
**Slander of Title**

34. The Vanguard Parties incorporate and reallege each of the preceding paragraphs as if fully set forth herein.

35. Daimler has published false statements disparaging the Vanguard Parties' title to the Vanguard Trailers and Unpaid VRTI Trailers. Specifically, Daimler caused liens to be recorded against the Vanguard Trailers and Unpaid VRTI Trailers based on security interests purportedly granted by KAL Freight. Those security interests are not valid because the KAL Entities never

held title to the trailers and therefore had no authority to encumber the trailers. Many of these liens are recorded on wrongfully obtained titles.

36. The liens are thus false statements of fact as to the title status of the Vanguard Trailers and Unpaid VRTI Trailers. These published statements were made without privilege or justification, and cast doubt on Vanguard Parties' ownership interests in the Vanguard Trailers and Unpaid VRTI Trailers in a manner that any reasonable purchaser or lessee would rely upon.

37. As a direct and proximate result of Daimler's recording of these false liens, the Vanguard Parties have suffered direct and immediate pecuniary loss, including but not limited to the impairment of their ability to sell, lease, or otherwise transfer the Vanguard Trailers and Unpaid VRTI Trailers; the depreciation in value of such trailers during the period the liens have remained of record; and the costs of litigation necessary to remove the cloud which Daimler has wrongfully cast upon their title.

38. Vanguard and VRTI are entitled to recover all such damages from Daimler, including but not limited to reasonable attorneys' fees and costs incurred in connection with this litigation.

**FIFTH COUNTERCLAIM**
**Warehouse Lien**

39. The Vanguard Parties incorporate and reallege each of the preceding paragraphs as if fully set forth herein.

40. To the extent Daimler has or had any valid security interest in the Vanguard Trailers and Unpaid VRTI Trailers in the possession of the Vanguard Parties—which it did not—the Vanguard Parties are entitled to a warehouse lien for the cost of storing and maintaining such trailers.

41. Under California Commercial Code §§ 7209–10, a warehouseman has a lien against a bailor for costs of storage in relation to the bailor's goods held by the warehouseman.

42. Vanguard and VRTI bore costs including but not limited to the physical storage of trailers at their facilities, maintenance costs to preserve the condition and operational integrity of the trailers, and other such costs.

43. Vanguard and VRTI are entitled to recover the costs they incurred in storing and maintaining the trailers until Daimler repossessed them.

## PRAYER FOR RELIEF

WHEREFORE, Vanguard and VRTI pray for judgment in their favor as follows:

1. For declaratory relief, that the Vanguard Trailers and Unpaid VRTI Trailers are property of Vanguard and VRTI;

2. For compensatory damages in an amount to be determined at trial, including but not limited to: (a) the value of the Vanguard Trailers Daimler repossessed; (b) lost profits that Vanguard and VRTI would have realized from the sale or lease of those trailers; (c) the depreciation in value of those trailers during the period the liens have remained of record; (d) any additional consequential damages flowing from such wrongful repossession; and (e) the costs of litigation necessary to remove the cloud which Daimler has wrongfully cast upon their title;

3. For punitive and exemplary damages;

4. For prejudgment and post-judgment interest at the legal rate;

5. For costs of litigation, including reasonable attorneys' fees; and

6. For such other and further relief, at law or in equity, as the Court deems just and proper.

Dated: May 13, 2026
Los Angeles, CA

*/s/Roberto Kampfner*
Roberto Kampfner

**WHITE & CASE LLP**
Roberto Kampfner (CA Bar No. 179026)
555 South Flower Street, Suite 2700
Los Angeles, CA 90071
Telephone: (213) 620-7700
Email: rkampfner@whitecase.com

Sean Gorman (*pro hac vice forthcoming*)
609 Main Street, Suite 2900
Houston, Texas 77002
Telephone: (713) 496-9700
Email: sean.gorman@whitecase.com

Fan B. He (*pro hac vice forthcoming*)
Southeast Financial Center, Suite 4900
200 South Biscayne Blvd.
Miami, FL 33131
Telephone: (305) 371-2700
Email: fhe@whitecase.com

*Counsel to Vanguard National Trailer Corporation and Vanguard Reefer Trailer, Inc..*

**WHITE & CASE LLP**

Roberto Kampfner (CA Bar No. 179026)
555 South Flower Street, Suite 2700
Los Angeles, CA 90071
Telephone: (213) 620-7700
Email: rkampfner@whitecase.com

– and –

Sean Gorman (*pro hac vice forthcoming*)
609 Main Street, Suite 2900
Houston, Texas 77002
Telephone: (713) 496-9700
Email: sean.gorman@whitecase.com

– and –

Fan B. He (*pro hac vice forthcoming*)
Southeast Financial Center, Suite 4900
200 South Biscayne Blvd.
Miami, FL 33131
Telephone: (305) 371-2700
Email: fhe@whitecase.com

*Counsel for Vanguard National Trailer Corporation and Vanguard Reefer Trailer, Inc.*

**IN THE UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| DAIMLER TRUCK FINANCIAL SERVICES USA LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>VANGUARD NATIONAL TRAILER CORPORATION and CIMC REEFER TRAILER, INC., a/k/a VANGUARD REEFER TRAILER, INC.,<br><br>*Defendants.* | Case No. 2:26-cv-3785<br><br>**CERTIFICATE OF SERVICE** |

I, the undersigned, am over 18 years of age and not a party to this action. I am employed by White & Case LLP, and my business address is in the county where the mailing took place. My business address is 555 South Flower Street, Suite 2700, Los Angeles, CA 90071.

On May 13, 2026, I served true copies of the following documents:

- **DEFENDANTS VANGUARD NATIONAL TRAILER CORPORATION's AND VANGUARD REEFER TRAILER, INC.'S ANSWER TO PLAINTIFF'S COMPLAINT FOR: (1) FRAUD, (2) NEGLIGENT MISRPRESENTATION, (3) DECLARATORY JUDGMENT, (4) CONSPIRACY, AND (5) MONEY HAD AND RECEIVED AND COUNTERCLAIMS**
- **DEFENDANT VANGUARD NATIONAL TRAILER CORPORATION'S CORPORATE DISCLOSURE STATEMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 7.1 AND NOTICE OF INTERESTED PARTIES PURSUANT TO LOCAL RULE 7.1–1**
- **DEFENDANT VANGUARD REEFER TRAILER, INC.'S CORPORATE DISCLOSURE STATEMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 7.1 AND NOTICE OF INTERESTED PARTIES PURSUANT TO LOCAL RULE 7.1–1**

in the following manner(s).

| | |
|---|---|
| ☐ | **By Email.** I caused all of the pages of the above-entitled document(s) to be electronically served on designated recipient(s). SEE ATTACHED SERVICE LIST |
| ☑ | **By Electronic Service Via NEF.** Pursuant to the Court's Local Rule 5-3.2 Authorizing Electronic Service, by submitting an electronic version of the foregoing document(s) via file transfer protocol to NOTICE OF ELECTRONIC FILING for service on the interested parties registered for e-filing in this action. |
| ☐ | **By United States Mail.** I enclosed the documents in a sealed envelope or package addressed to the person(s) at the address(es) listed below and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. |
| ☐ | **By Overnight Delivery.** I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the person(s) at the address(es) listed below. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier. |
| ☐ | **By Personal Service.** I caused the documents listed above to be personally delivered to the person(s) at the address(es) listed below by messenger. |

I hereby certify that I am employed in the office of a member of the Bar of this Court at

whose direction the service was made.

I hereby certify that under the penalty of perjury the foregoing in true and correct.

Dated: May 13, 2026
Los Angeles, CA

*/s/Roberto Kampfner*
Roberto Kampfner

**WHITE & CASE LLP**
Roberto Kampfner (CA Bar No. 179026)
555 South Flower Street, Suite 2700
Los Angeles, CA 90071
Telephone: (213) 620-7700
Email: rkampfner@whitecase.com

Sean Gorman (*pro hac vice forthcoming*)
609 Main Street, Suite 2900
Houston, Texas 77002
Telephone: (713) 496-9700
Email: sean.gorman@whitecase.com

Fan B. He (*pro hac vice forthcoming*)
Southeast Financial Center, Suite 4900
200 South Biscayne Blvd.
Miami, FL 33131
Telephone: (305) 371-2700
Email: fhe@whitecase.com

*Counsel to Vanguard National Trailer Corporation and Vanguard Reefer Trailer, Inc..*