F. PHILLIP HOSP, CA Bar No. 265225
phosp@foley.com
ANUM AMIN, CA Bar No. 319662
aamin@foley.com
CASEY GENG, CA Bar No. 357270
casey.geng@foley.com
**FOLEY & LARDNER LLP**
555 South Flower Street, Suite 3300
Los Angeles, CA 90071-2418
Telephone: (213) 972-4500
Facsimile (213) 486-0065

STEPHEN A. MCCARTIN (TX 13374700)
(*pro hac vice*)
smccartin@foley.com
BRANDON C. MARX (TX 24098046)
(*pro hac vice*)
bmarx@foley.com
**FOLEY & LARDNER LLP**
2021 McKinney Avenue, Suite 1600
Dallas, TX 75201
Telephone: (214) 999-3000
Facsimile: (214) 999-4667

KIM P. GAGE, CA Bar No. 82051
kgage@cookseylaw.com
**COOKSEY TOOLEN GAGE DUFFY WOOG**
535 Anton Boulevard, Suite 1000
Costa Mesa, CA 92626-1977
Telephone: 714.431.1090
Facsimile: 714.431.1119

Attorneys for Plaintiff
DAIMLER TRUCK FINANCIAL SERVICES USA

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

DAIMLER TRUCK FINANCIAL SERVICES USA LLC,

*Plaintiff,*

v.

VANGUARD NATIONAL TRAILER CORPORATION and CIMC REEFER TRAILER, INC., a/k/a VANGUARD REEFER TRAILER, INC.,

*Defendants.*

VANGUARD NATIONAL TRAILER CORPORATION and CIMC REEFER TRAILER, INC., a/k/a VANGUARD REEFER TRAILER, INC.,

*Counterclaimants,*

v.

DAIMLER TRUCK FINANCIAL SERVICES USA LLC,

*Counter-Defendant.*

Case No. 2:26-cv-03785-FMO-KS

**PLAINTIFF DAIMLER TRUCK FINANCIAL SERVICES USA LLC'S ANSWER TO COUNTERCLAIMS**

**PLAINTIFF DAIMLER TRUCK FINANCIAL SERVICES USA LLC'S ANSWER**

Daimler Truck Financial Services USA LLC ("Daimler" or "Plaintiff"), by and through its undersigned counsel, hereby answers the counterclaims (the "Counterclaims") filed by Defendants Vanguard National Trailer Corporation ("Vanguard") and Vanguard Reefer Trailer, Inc. ("VRTI") (collectively, the "Defendants" or "Vanguard Parties") as follows: Daimler specifically denies each and every allegation contained in the Counterclaims except as expressly admitted herein. Daimler responds to each paragraph of the Counterclaims in the order presented and incorporates its responses and defenses as stated below. To the extent any response is not specifically addressed herein, Daimler denies all remaining allegations and reserves all rights, claims, and defenses, affirmative or otherwise, as may be available pursuant to law or equity.

1. The Vanguard Parties (the "Counterclaim Plaintiffs"), by and through their undersigned counsel, for their counterclaim against Daimler (the "Counterclaim Defendant") hereby allege as follows:

ANSWER: The allegations consist of the Vanguard Parties' statements concerning the procedure of them bringing a counterclaim, to which no response is required. To the extent a response is required, Daimler denies the allegations.

**THE PARTIES**

2. The Counterclaim Plaintiffs incorporate by reference as if fully set forth herein allegations about the Counterclaim Defendant in Paragraph 17 above.

ANSWER: Daimler admits the allegations.

3. The Counterclaim Plaintiffs incorporate by reference as if fully set forth herein allegations about Counterclaim Plaintiff Vanguard in Paragraph 18 above.

ANSWER: Daimler admits the allegations.

4. Counterclaim Plaintiff VRTI is a company incorporated in Delaware under the name Vanguard Reefer Trailer, Inc. and its registered agent is Corporation

Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808.

ANSWER: Daimler admits the allegations.

## JURISDICTION AND VENUE

5. On information and belief, the Court has subject matter jurisdiction over Defendants' counterclaim under 28 U.S.C. §§ 1332, 1367.

ANSWER: The allegations are legal conclusions to which no response is required.

6. The Court has personal jurisdiction over the Counterclaim Defendant because Daimler has purposefully availed itself of the privileges of conducting business in California and the Vanguard Parties' claims arise out of or relate to Daimler's conduct in this state.

ANSWER: The allegations are legal conclusions to which no response is required.

7. Venue in this District is proper under 28 U.S.C. § 1391(b) because a substantial part of the events alleged herein that give rise to the claims occurred in this judicial district.

ANSWER: The allegations are legal conclusions to which no response is required.

8. Independently, the Counterclaim Defendant consented to personal jurisdiction and venue in this District when it filed its Complaint.

ANSWER: The allegations are legal conclusions to which no response is required.

## FACTUAL ALLEGATIONS

### I. The Kal Entities' Malfeasance Against the Vanguard Parties

9. Vanguard and VRTI manufacture and sell dry van and refrigerated trailers and related parts. Several years ago, Vanguard and VRTI began selling refrigerated and dry van trailers and related equipment to the KAL Entities pursuant to certain purchase orders, invoices, and contracts (the "Sale Agreements").

Specifically, Vanguard manufactured and sold dry van trailers to KAL Trailers, and VRTI manufactured and sold refrigerated or reefer trailers to KAL Trailers. KAL Trailers' obligations to Vanguard and VRTI under the Sale Agreements were guaranteed by KAL Freight.

ANSWER: Daimler admits that the Vanguard Parties sold refrigerated and dry van trailers to KAL Trailers. Daimler denies that the Vanguard Parties sold trailers to KAL Freight. The allegations concerning the sale of those trailers are legal conclusions to which no response is required. To the extent a response is required, Daimler denies those allegations. Daimler is without knowledge or information sufficient to form a belief as to the remaining allegations contained in the paragraph, so the allegations are denied.

10. In the ordinary course of business and consistent with industry practice, Vanguard and VRTI entered into Sale Agreements with KAL Trailers for the purchase of trailers. Vanguard, VRTI and KAL Trailers agreed, as reflected in the Terms & Conditions of the Sale Agreements, that title to the trailers would remain with Vanguard and/or VRTI until KAL Trailers had fully paid for the trailers. Consistent with customary industry practice, after an ordered trailer had been manufactured, the Vanguard Parties provided KAL Trailers with copies of the manufacturer's certificate of origin (or "MCO") for such trailer. An MCO is an official document issued by a vehicle manufacturer, in this case the Vanguard Parties. The MCO acts as a new vehicle's "birth certificate." It verifies that the vehicle was built to safety standards and is used to establish ownership for the initial registration. There is only one original MCO, and MCOs are usually printed on special paper bearing a watermark that becomes visible when the MCO is copied. The watermark is conspicuous, appears in several locations on the face of the copy of the MCO and usually states "void". It is critical for copies of an MCO to be readily identifiable as copies and the original MCOs to prevent confusion as to who initially owns a vehicle.

ANSWER: The allegations regarding title and MCOs are legal conclusions to

which no response is required. To the extent a response is required, Daimler denies those allegations. Daimler denies the remaining allegations in the paragraph.

11. In the trailer industry, sales on credit typically occur as follows. First, a customer places an order for a trailer and the manufacturer begins to assemble the requested trailer. Second, an original MCO is produced identifying the trailer by VIN number and the customer purchasing the trailer. The original MCO, however, is not delivered to the customer. Instead, a copy of the MCO, containing a clear and conspicuous watermark reading "void" is delivered to the customer. Third, the customer can use copies of the MCO to obtain temporary license plates for the trailer and to obtain the financing required to purchase the trailer from the manufacturer. Financing parties typically consider copies of MCOs sufficient for financing purposes because they establish that a trailer has been produced and that the original MCO will be transferred by the manufacturer to the customer once the manufacturer has been paid. Once the financing is obtained, the customer delivers the proceeds to the manufacturer and pays for the trailer. Once paid, the manufacturer sends the original MCO to the customer, thereby transferring title. The customer, as holder of the original MCO, is now authorized to obtain an official title to the vehicle from the state. This title will, in turn, note the financing source as the lien holder on the vehicle. At the end of the day, the manufacturer is paid in full, the customer has title to the trailer, and the financing source has a recorded lien on the trailer it financed. This process has proven reliable and effective for many years. As noted above, this is customary procedure used in the trailer industry.

ANSWER: The allegations regarding title are legal conclusions to which no response is required. To the extent a response is required, Daimler denies those allegations. Daimler denies the remaining allegations in the paragraph.

12. Between 2022 and 2023, Vanguard manufactured and delivered the dry van trailers listed on Exhibit A to KAL Trailers (the "Vanguard Trailers"). In connection with these sales, Vanguard produced MCOs for the trailers but did not

deliver any original MCOs to KAL Trailers.

Instead, consistent with industry practice (as described above), Vanguard delivered copies of the relevant MCOs to KAL Trailers. Upon information and belief, KAL Trailers obtained financing to purchase the Vanguard Trailers from Daimler, but did not use the proceeds of the financing for the intended purpose of paying for the Vanguard Trailers. Instead, those proceeds were diverted for unknown purposes. KAL Trailers has never paid for the Vanguard Trailers and, accordingly, has never received the original MCOs in respect of those trailers.

ANSWER: Daimler admits that Vanguard manufactured and delivered the Vanguard Trailers to KAL Trailers and Vanguard provided executed, dated and endorsed MCO copies to KAL Trailers. Daimler denies that it provided financing to KAL Trailers for the trailers at-issue. Daimler is without knowledge or information sufficient to form a belief as to the remaining allegations in the paragraph, so the allegations are denied.

13. During this same time period, VRTI manufactured the reefer trailers listed on Exhibit B for KAL Trailers (the "Unpaid VRTI Trailers"). In connection with these sales, Vanguard produced original MCOs for the Unpaid VRTI Trailers. With the exception of five trailers, VRTI did not deliver original MCOs to KAL Trailers. Under the terms of the Sales Agreements, title to trailers transfers to KAL Trailers once it pays for the trailers in full and not upon delivery of the original MCOs. KAL Trailers never paid VRTI for the Unpaid VRTI Trailers, including those five trailers for which the original MCOs were delivered to KAL Trailers. Thus, title to the Unpaid VRTI Trailers remained at all times with VRTI.

ANSWER: The allegations regarding title are legal conclusions to which no response is required. To the extent a response is required, Daimler denies those allegations. Daimler admits that VRTI manufactured and sold the Unpaid VRTI Trailers to KAL Trailers. Daimler is without knowledge or information sufficient to form a belief as to the remaining allegations in the paragraph, so the allegations are

denied.

14. Except for five trailers, VRTI did not deliver any originals to KAL Trailers. Instead, it delivered copies of these MCOs to KAL Trailers, consistent with industry practice (as described above). Upon information and belief, KAL Trailers obtained financing to purchase the Unpaid VRTI Trailers from Daimler, but did not use the proceeds of the financing for the intended purpose of paying for the Unpaid VRTI Trailers. Instead, those proceeds were diverted for unknown purposes. KAL Trailers has never paid for the Unpaid VRTI Trailers and, accordingly, has never received the original MCOs in respect of those trailers.

ANSWER: Daimler denies that KAL Trailers obtained financing from Daimler for the trailers at-issue. Daimler admits that the Vanguard Parties provided copies of executed, dated, and endorsed MCOs to KAL Trailers. Daimler is without knowledge or information sufficient to form a belief as to the remaining allegations in the paragraph, so the allegations are denied.

15. Under the Sales Agreements, title to the Vanguard Trailers and Unpaid VRTI Trailers does not transfer to the KAL Entities until the Vanguard Parties have received full payment therefor. The Vanguard Parties have never been paid for the Vanguard Trailers and the Unpaid VRTI Trailers. Accordingly, per the terms of the Sales Agreements, title to such trailers resides with the Vanguard Parties.

ANSWER: The allegations concerning title are legal conclusions to which no response is required. To the extent a response is required, Daimler denies those allegations. Daimler is without knowledge or information sufficient to form a belief as to the remaining allegations in the paragraph, so the allegations are denied.

16. Under the California Vehicle Code, title to a vehicle is not transferred until the transferor "has made proper endorsement and delivery of the certificate of ownership to the transferee as provided in this code . . ." Cal. Vehicle Code § 5600. The Vanguard Parties were never paid for the Vanguard Trailers and Unpaid VRTI Trailers and, accordingly, never delivered original MCOs to the KAL Entities in

respect of such trailers (except for five trailers discussed above). As a result, title to the VRTI Trailers and the Unpaid VRTI Trailers resides with the Vanguard Parties. In violation of California law, the KAL Entities obtained titles to the Vanguard Trailers and the VRTI Unpaid Trailers despite never paying for the trailers and not receiving original MCOs for nearly all trailers. These titles are fraudulent and void.

ANSWER: The allegations concerning title and the California Vehicle Code are legal conclusions to which no response is required. To the extent a response is required, Daimler denies those allegations. Daimler is without knowledge or information sufficient to form a belief as to the remaining allegations in the paragraph, so the allegations are denied.

17. Section 2-703 of the Uniform Commercial Code permits a seller to exercise certain remedies if it is not paid for goods. These remedies include canceling delivery of the goods in question, reselling the goods in question to a third party and canceling the underlying sales contracts in respect of such goods. In this case, as a result of the failure of the KAL Entities to pay for the Vanguard Trailers and Unpaid VRTI Trailers, the Vanguard Parties exercised their rights under Section 2-703 of the Uniform Commercial Code to, among other things, cancel delivery of some Unpaid VRTI Trailers and cancel the Sales Agreements in respect of all Vanguard Trailers and Unpaid VRTI Trailers. In addition, and also consistent with its rights under Section 2-703 of the Uniform Commercial Code, VRTI resold the Unpaid VRTI Trailers listed on Exhibit C to a third party known as King Country after canceling the Sales Agreements.

ANSWER: The allegations are legal conclusions to which no response is required. To the extent a response is required, Daimler denies those allegations. Daimler is without knowledge or information sufficient to form a belief as to the remaining allegations in the paragraph, so the allegations are denied.

18. The Vanguard Parties estimate that the outstanding invoices for the Vanguard Trailers and Unpaid VRTI Trailers total approximately $24.3 million.

ANSWER: Daimler is without knowledge or information sufficient to form a belief as to the allegations in the paragraph, so the allegations are denied.

## II. The KAL Entities' Bankruptcy Cases

19. On December 5, 2024, KAL Trailers and KAL Freight filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code with the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court"), Case No. 24-90614 (CML) (the "Bankruptcy Cases"). The KAL Entities' plans of liquidation have been confirmed and became effective on April 18, 2025.

ANSWER: Daimler admits the allegations in the paragraph.

20. In connection with the KAL Entities' Chapter 11 cases, the Vanguard Parties asserted claims against the KAL Entities for unpaid amounts for the Vanguard Trailers and Unpaid VRTI Trailers. The Vanguard Parties also commenced an adversary proceeding in the Bankruptcy Cases to assert their ownership interest in the Vanguard Trailers and Unpaid VRTI Trailers, recover their trailers, unpaid amounts and damages related thereto, and void liens the KAL Entities had purportedly granted to various lenders, including Daimler.

ANSWER: The allegations in the paragraph are legal conclusions to which no response is required. To the extent a response is required, Daimler denies those allegations. Daimler denies it was made a party to this bankruptcy adversary proceeding.

21. Nevertheless, Daimler sought and obtained orders from the Bankruptcy Court terminating the automatic stay and authorizing Daimler to take possession of all of its purported collateral, including purported collateral in the possession of third parties such as Vanguard and VRTI. See Case No. 24-90614, Docket Nos. 762 and 770. Armed with those orders, and with full knowledge of the Vanguard Parties' competing title claims, Daimler proceeded to repossess certain of the Vanguard Trailers and Unpaid VRTI Trailers. Those trailers are and have always been the property of the Vanguard Parties.

ANSWER: The allegations in the paragraph are legal conclusions to which no response is required. To the extent a response is required, Daimler denies those allegations.

**III. Daimler**

22. Upon information and belief, Daimler may have extended credit to the KAL Entities for the purpose of purchasing the Vanguard Trailers and the Unpaid VRTI Trailers. As security for this purported financing, Daimler may have received purported security interests and liens in the Vanguard Trailers and the Unpaid VRTI Trailers. Certain of these liens may be recorded on titles the KAL Entities fraudulently obtained in respect of the Vanguard Trailers and Unpaid VRTI Trailers. Daimler's purported security interests and liens to secure the financing provided to the KAL Entities are derivative of the interests of the KAL Entities in the Vanguard Trailers and Unpaid VRTI Trailers. The KAL Entities did not use the proceeds of Daimler's purported financing to pay for the Vanguard Trailers and Unpaid VRTI Trailers and the KAL Entities did not otherwise pay for such trailers. As a result, title to the Vanguard Trailers and Unpaid VRTI Trailers never passed to the KAL Entities. Among other things, the applicable Sales Agreements provide that title to the Vanguard Trailers and Unpaid VRTI Trailers does not pass until the Vanguard Parties have been paid in full. Further, the Vanguard Parties did not deliver original MCOs to the KAL Entities in respect of the Vanguard Trailers and Unpaid VRTI Trailers, as required by law to transfer title. In addition, the Vanguard Parties exercised their remedies under Section 2-703 of the Uniform Commercial Code to cancel the underlying sales transactions in respect of Vanguard Trailers and Unpaid VRTI Trailers. Accordingly, the KAL Entities never obtained title to the Vanguard Trailers and Unpaid VRTI Trailers and Daimler's security interests and liens in the Vanguard Trailers and Unpaid VRTI Trailers (which are derivative of the interests of the KAL Entities) never attached to the Vanguard Trailers and Unpaid VRTI Trailers and are null and void.

ANSWER: The allegations concerning title, the Uniform Commercial Code, security interests, and liens are legal conclusions to which no response is required. To the extent a response is required, Daimler denies those allegations. Daimler admits that it extended financing to KAL Freight to purchase trailers from the Vanguard Parties, and that the trailers were pledged to Daimler as collateral, the liens of which were perfected by being noted on certificates of title. To the extent a further response is required, Daimler denies the remaining allegations in the paragraph.

23. Notwithstanding the foregoing, Daimler has refused to acknowledge that it has no interest in the Vanguard Trailers and Unpaid VRTI Trailers. To the contrary, Daimler has refused to cooperate with the Vanguard Parties in releasing its void liens on the Vanguard Trailers and Unpaid VRTI Trailers, which has prevented the Vanguard Parties from mitigating damages and has resulted in substantial damage to the Vanguard Parties. Indeed, Daimler has even refused to permit the Vanguard Parties to sell the Unpaid VRTI Trailers to third parties to mitigate damages, even on the condition that the proceeds of sale be placed in escrow pending a determination of the interests of the Vanguard Parties and Daimler in the applicable trailers. Daimler's unreasonable behavior has materially harmed the Vanguard Parties.

ANSWER: The allegations contained in the paragraph are legal conclusions to which no response is required. To the extent a response is required, Daimler denies those allegations.

**FIRST COUNTERCLAIM**

**Declaratory Judgment That the Vanguard Parties Have Title to the Vanguard Trailers and Unpaid VRTI Trailers and that Daimler's Security Interests and Liens are Void**

24. The Vanguard Parties incorporate and reallege each of the preceding paragraphs as if fully set forth herein.

ANSWER: Daimler restates and reincorporates by reference the preceding paragraphs of this Answer to the Counterclaim.

25. There is an actual controversy between the Vanguard Parties and

Daimler concerning the legal ownership of, and security interests with respect to, certain Vanguard Trailers and Unpaid VRTI Trailers that are allegedly subject to Daimler's purported liens. This substantial controversy is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

ANSWER: The allegations in the paragraph are legal conclusions to which no response is required. To the extent a response is required, Daimler denies those allegations.

26. Based on the terms of the Sale Agreements between the Vanguard Parties and KAL Trailers, California law and the Uniform Commercial Code, the Vanguard Parties have at all relevant times been the owners of the title to, and have had the right to possession of, each of the Vanguard Trailers and the Unpaid VRTI Trailers, including any such trailers purportedly subject to Daimler's disputed liens. Among other things, the Vanguard Parties did not provide any original MCOs to the KAL Entities for the Vanguard Trailers and Unpaid VRTI Trailers (except for five of the Unpaid VRTI Trailers, supra ¶ 11), including any such trailers purportedly subject to Daimler's disputed liens. Further, under the Sales Agreements, title to the Vanguard Trailers and Unpaid VRTI Trailers does not pass to the KAL Entities until the Vanguard Parties are paid in full for the relevant trailers. No such payments were made. Further, the Vanguard Parties canceled all sales contracts relating to the Vanguard Trailers and Unpaid VRTI Trailers pursuant to Section 2-703 of the Uniform Commercial Code. Therefore, title to the Vanguard Trailers and Unpaid VRTI Trailers has remained with the Vanguard Parties and never passed to the KAL Entities. Daimler's security interests and liens, at best, only attach to the interests of the KAL Entities in the Vanguard Trailers and Unpaid VRTI Trailers. Since the KAL Entities have no interests in such trailers, all security interests and liens granted to Daimler thereon are void.

ANSWER: The allegations in the paragraph are legal conclusions to which no response is required. To the extent a response is required, Daimler denies those

allegations.

27. Based upon the foregoing, pursuant to 28 U.S.C. § 2201, the Vanguard Parties are entitled to a declaration from this Court that Vanguard and VRTI are the owners and lawful title holders of the Vanguard Trailers and Unpaid VRTI Trailers and that Daimler has no security interests or liens in such trailers.

ANSWER: The allegations in the paragraph are legal conclusions to which no response is required. To the extent a response is required, Daimler denies those allegations.

## SECOND COUNTERCLAIM

### Conversion (Under California Law)

28. The Vanguard Parties incorporate and reallege each of the preceding paragraphs as if fully set forth herein.

ANSWER: Daimler restates and reincorporates by reference the preceding paragraphs of this Answer to the Counterclaim.

29. At all times relevant hereto, Vanguard and VRTI were the lawful owners of the Vanguard Trailers and Unpaid VRTI Trailers as a result of the KAL Entities' failure to pay for such trailers and unlawfully obtaining title to the trailers with copies of the MCO, and the Vanguard Parties' canceling the Sale Agreements under Section 2-703 of the Uniform Commercial Code. Notwithstanding Vanguard's and VRTI's lawful ownership of the Vanguard Trailers and Unpaid VRTI Trailers, Daimler refused to release its void liens on Vanguard Trailers and Unpaid VRTI Trailers. Instead, it alleged that its liens are valid and prevented the Vanguard Parties from selling the Unpaid VRTI Trailers to third parties to mitigate damages. It also repossessed certain Vanguard Trailers it purportedly has liens on. In doing so, Daimler exercised wrongful dominion and control over personal property that is and has always been the lawful property of Vanguard Parties and caused material harm to the Vanguard Parties. Under California law, Daimler's conduct constitutes conversion of the Vanguard Parties' property.

ANSWER: The allegations in the paragraph are legal conclusions to which no response is required. To the extent a response is required, Daimler denies those allegations.

30. As a direct and proximate result of Daimler's repossession of the trailers, the Vanguard Parties have suffered damages and are entitled to recover from Daimler damages in an amount to be determined at trial, including but not limited to (a) the value of the trailers it repossessed; (b) the lost profits that Vanguard Parties would have realized from the sale or lease of those trailers; and (c) any additional consequential damages flowing from such wrongful repossession.

ANSWER: The allegations in the paragraph are legal conclusions to which no response is required. To the extent a response is required, Daimler denies those allegations.

## THIRD COUNTERCLAIM

## Money Had and Received

31. The Vanguard Parties incorporate and reallege each of the preceding paragraphs as if fully set forth herein.

ANSWER: Daimler restates and reincorporates by reference the preceding paragraphs of this Answer to the Counterclaim.

32. To the extent that Daimler received money from the sale of any of the Vanguard Trailers and Unpaid VRTI Trailers that it repossessed, the money that Daimler received from such sales belongs to the Vanguard Parties as the legitimate title holders of such trailers and Daimler is therefore indebted to the Vanguard Parties for money had and received by Daimler for the use of the Vanguard Parties.

ANSWER: The allegations in the paragraph are legal conclusions to which no response is required. To the extent a response is required, Daimler denies those allegations.

33. The Vanguard Parties seek damages from Daimler in the amount of money Daimler received from the resale of the repossessed trailers.

ANSWER: The allegations in the paragraph are legal conclusions to which no response is required. To the extent a response is required, Daimler denies those allegations.

## FOURTH COUNTERCLAIM

### Slander of Title

34. The Vanguard Parties incorporate and reallege each of the preceding paragraphs as if fully set forth herein.

ANSWER: Daimler restates and reincorporates by reference the preceding paragraphs of this Answer to the Counterclaim.

35. Daimler has published false statements disparaging the Vanguard Parties' title to the Vanguard Trailers and Unpaid VRTI Trailers. Specifically, Daimler caused liens to be recorded against the Vanguard Trailers and Unpaid VRTI Trailers based on security interests purportedly granted by KAL Freight. Those security interests are not valid because the KAL Entities never held title to the trailers and therefore had no authority to encumber the trailers. Many of these liens are recorded on wrongfully obtained titles.

ANSWER: The allegations in the paragraph are legal conclusions to which no response is required. To the extent a response is required, Daimler denies those allegations.

36. The liens are thus false statements of fact as to the title status of the Vanguard Trailers and Unpaid VRTI Trailers. These published statements were made without privilege or justification, and cast doubt on Vanguard Parties' ownership interests in the Vanguard Trailers and Unpaid VRTI Trailers in a manner that any reasonable purchaser or lessee would rely upon.

ANSWER: The allegations in the paragraph are legal conclusions to which no response is required. To the extent a response is required, Daimler denies those allegations.

37. As a direct and proximate result of Daimler's recording of these false

liens, the Vanguard Parties have suffered direct and immediate pecuniary loss, including but not limited to the impairment of their ability to sell, lease, or otherwise transfer the Vanguard Trailers and Unpaid VRTI Trailers; the depreciation in value of such trailers during the period the liens have remained of record; and the costs of litigation necessary to remove the cloud which Daimler has wrongfully cast upon their title.

ANSWER: The allegations in the paragraph are legal conclusions to which no response is required. To the extent a response is required, Daimler denies those allegations.

38. Vanguard and VRTI are entitled to recover all such damages from Daimler, including but not limited to reasonable attorneys' fees and costs incurred in connection with this litigation.

ANSWER: The allegations in the paragraph are legal conclusions to which no response is required. To the extent a response is required, Daimler denies those allegations.

## FIFTH COUNTERCLAIM

## Warehouse Lien

39. The Vanguard Parties incorporate and reallege each of the preceding paragraphs as if fully set forth herein.

ANSWER: Daimler restates and reincorporates by reference the preceding paragraphs of this Answer to the Counterclaim.

40. To the extent Daimler has or had any valid security interest in the Vanguard Trailers and Unpaid VRTI Trailers in the possession of the Vanguard Parties—which it did not—the Vanguard Parties are entitled to a warehouse lien for the cost of storing and maintaining such trailers.

ANSWER: The allegations in the paragraph are legal conclusions to which no response is required. To the extent a response is required, Daimler denies those allegations.

41. Under California Commercial Code §§ 7209–10, a warehouseman has a lien against a bailor for costs of storage in relation to the bailor's goods held by the warehouseman.

ANSWER: The allegations in the paragraph are legal conclusions to which no response is required. To the extent a response is required, Daimler denies those allegations.

42. Vanguard and VRTI bore costs including but not limited to the physical storage of trailers at their facilities, maintenance costs to preserve the condition and operational integrity of the trailers, and other such costs.

ANSWER: The allegations in the paragraph are legal conclusions to which no response is required. To the extent a response is required, Daimler denies those allegations.

43. Vanguard and VRTI are entitled to recover the costs they incurred in storing and maintaining the trailers until Daimler repossessed them.

ANSWER: The allegations in the paragraph are legal conclusions to which no response is required. To the extent a response is required, Daimler denies those allegations.

## PRAYER FOR RELIEF

44. WHEREFORE, Vanguard and VRTI pray for judgment in their favor as follows:

1. For declaratory relief, that the Vanguard Trailers and Unpaid VRTI Trailers are property of Vanguard and VRTI;

2. For compensatory damages in an amount to be determined at trial, including but not limited to: (a) the value of the Vanguard Trailers Daimler repossessed; (b) lost profits that Vanguard and VRTI would have realized from the sale or lease of those trailers; (c) the depreciation in value of those trailers during the period the liens have remained of record; (d) any additional consequential damages flowing from such wrongful repossession; and (e) the costs of litigation necessary to

remove the cloud which Daimler has wrongfully cast upon their title;

3. For punitive and exemplary damages;

4. For prejudgment and post-judgment interest at the legal rate;

5. For costs of litigation, including reasonable attorneys' fees; and

6. For such other and further relief, at law or in equity, as the Court deems just and proper.

ANSWER: Daimler denies the allegations in the Prayer for Relief. Daimler denies that the Vanguard Parties are entitled to any of the relief requested in the Prayer for Relief. Daimler also denies that the Vanguard Parties are entitled to attorneys' fees. Daimler requests that the Vanguard Parties take nothing on their Counterclaims, enter judgment in favor of Daimler, and award all such relief to which Daimler is entitled.

## AFFIRMATIVE DEFENSES

Pursuant to Rule 8(c) of the Federal Rules of Civil Procedure, Daimler further responds to the Counterclaim by alleging the following affirmative defenses. Daimler reserves the right to assert additional affirmative defenses at a later time and to such extent as warranted by discovery and the factual developments in this case, and asserts the separate defenses, avoidances, and affirmative defenses herein in good faith to avoid waiver.

## FIRST AFFIRMATIVE DEFENSE

### (Failure to State a Claim)

1. The Vanguard Parties' claims fail, in whole or in part, due to the failure to state a claim upon which relief may be granted.

## SECOND AFFIRMATIVE DEFENSE

### (Lien Priority)

2. The Vanguard Parties' claims fail, in whole or in part, because Daimler's liens have priority over the Vanguard Parties' security interests.

**<u>THIRD AFFIRMATIVE DEFENSE</u>**

**(Fraud)**

3. The Vanguard Parties' claims fail, in whole or in part, due to the Vanguard Parties' fraud.

**<u>FOURTH AFFIRMATIVE DEFENSE</u>**

**(Statute of Limitations)**

4. The Vanguard Parties' claims fail, in whole or in part, due to the statute of limitations.

**<u>FIFTH AFFIRMATIVE DEFENSE</u>**

**(Right to Possession)**

5. The Vanguard Parties' claims fail, in whole or in part, because Daimler has the right to possession and ownership of the trailers.

**<u>SIXTH AFFIRMATIVE DEFENSE</u>**

**(Unjustified Refusal)**

6. The Vanguard Parties' claims fail, in whole or in part, because the Vanguard Parties' unjustifiably refuse to deliver the trailers to Daimler.

**<u>SEVENTH AFFIRMATIVE DEFENSE</u>**

**(No Storage Agreement)**

7. The Vanguard Parties' claims fail, in whole or in part, because no warehouse receipt has been issued and there is no storage agreement.

**<u>EIGHTH AFFIRMATIVE DEFENSE</u>**

**(Business Compensation)**

8. The Vanguard Parties' claims fail, in whole or in part, because the Vanguard Parties are not in the business of storing goods for compensation.

**<u>NINTH AFFIRMATIVE DEFENSE</u>**

**(Unclean Hands)**

9. The Vanguard Parties' claims fail, in whole or in part, because of unclean hands.

**TENTH AFFIRMATIVE DEFENSE**

**(Equitable Estoppel)**

10. The Vanguard Parties' claims fail, in whole or in part, because of equitable estoppel.

**ELEVENTH AFFIRMATIVE DEFENSE**

**(Privilege or Justification)**

11. The Vanguard Parties' claims fail, in whole or in part, because Daimler's conduct was privileged and/or justified as a matter of law. Among other things, Daimler was a lienholder that held perfected security interests and acted within its legal rights in recording and maintaining those liens and enforcing the security interests.

**TWELFTH AFFIRMATIVE DEFENSE**

**(No Damages or Injury)**

12. The Vanguard Parties' claims fail, in whole or in part, because the Vanguard Parties have not suffered any pecuniary loss.

**THIRTEENTH AFFIRMATIVE DEFENSE**

**(Laches)**

13. The Vanguard Parties' claims fail, in whole or in part, because of the doctrine of laches.

**FOURTEENTH AFFIRMATIVE DEFENSE**

**(Failure to Mitigate)**

14. The Vanguard Parties' damages fail, in whole or in part, because of the failure to mitigate.

**FIFTEENTH AFFIRMATIVE DEFENSE**

**(Conditions Precedent)**

15. The Vanguard Parties' claims fail because they have not performed all conditions precedent to support their claims.

**SIXTEENTH AFFIRMATIVE DEFENSE**

**(Setoff and Recoupment)**

16. The Vanguard Parties' claims are barred, in whole or in part, by the doctrines of setoff and recoupment.

**SEVENTEENTH AFFIRMATIVE DEFENSE**

**(Assumption of Risk)**

17. The Vanguard Parties' claims are barred, in whole or in part, to the extent any alleged damages were caused by risks that the Vanguard Parties were aware of, understood, and voluntarily assumed.

**EIGHTEENTH AFFIRMATIVE DEFENSE**

**(Contributory Negligence)**

18. The Vanguard Parties' claims are barred, in whole or in part, because the Vanguard Parties caused or contributed to the alleged harm or damages, if any, claimed in the Counterclaim.

**NINETEENTH AFFIRMATIVE DEFENSE**

**(Waiver)**

19. The Vanguard Parties' claims are barred, in whole or in part, by the doctrine of waiver.

**TWENTIETH AFFIRMATIVE DEFENSE**

**(Good Faith Purchaser for Value)**

20. The Vanguard Parties' claims fail, in whole or in part, because Daimler is a good faith lender and/or purchaser for value that extended tens of millions of dollars in purchase money loans in reliance on valid MCO copies and California-issued certificates of title, without notice of any adverse claims or title defect in title to the Vanguard Trailers and Unpaid VRTI Trailers.

**RESERVATION OF RIGHTS**

21. Daimler reserves the right to assert additional defenses, amend or withdraw any defense, and supplement its Answer as discovery progresses and

additional facts become known.

Dated: June 3, 2026

**FOLEY & LARDNER LLP**

*<u>/s/ F. Phillip Hosp</u>*
F. Phillip Hosp

Attorneys for Plaintiff
DAIMLER TRUCK FINANCIAL SERVICES USA LLC