**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

DAIMLER TRUCK FINANCIAL SERVICES USA LLC,

*Plaintiff,*

v.

VANGUARD NATIONAL TRAILER CORPORATION and CIMC REEFER TRAILER, INC., a/k/a VANGUARD REEFER TRAILER, INC.,

*Defendants.*

VANGUARD NATIONAL TRAILER CORPORATION and CIMC REEFER TRAILER, INC., a/k/a VANGUARD REEFER TRAILER, INC.,

*Counterclaimants,*

v.

DAIMLER TRUCK FINANCIAL SERVICES USA LLC,

*Counter-Defendant.*

Case No. 2:26-cv-03785-FMO-KS

**STIPULATED PROTECTIVE ORDER RE DISCOVERY OF ELECTRONICALLY STORED INFORMATION**

Plaintiff DAIMLER TRUCK FINANCIAL SERVICES USA LLC ("Plaintiff") and Defendants VANGUARD NATIONAL TRAILER CORPORATION and CIMC REEFER TRAILER, INC., a/k/a VANGUARD REEFER TRAILER, INC. ("Defendants") (together, the "parties"), by and through their undersigned counsel, hereby stipulate and agree to the following provisions regarding the discovery of electronically stored information ("ESI") in this action.

**A. General Principles**

1. All parties are under an obligation to take reasonable steps to comply with this Stipulated Order Re: Discovery of Electronically Stored Information ("Order"). The parties are aware of the importance the Court places on cooperation and have agreed to cooperate in good faith in facilitating discovery in this action.

2. The procedures and protocols set forth in this Order shall govern the production format of hard-copy documents and ESI in this action, to the extent available, reasonably accessible, and proportional to the needs of this action all as contemplated by the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 26(b)(1). By stipulating to this Order, the parties do not waive any objections, privileges, or arguments against the production or disclosure of documents, ESI, and other information.

3. The parties will attempt to resolve, in person, in writing (including email), or by telephone, disputes regarding the issues set forth herein before filing a motion with or otherwise seeking relief from the Court. The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout this action with respect to the discovery of ESI and otherwise. If the parties are unable to resolve the dispute after a good-faith effort, then the parties

may seek Court intervention in accordance with applicable rules and the Court's procedures.

**B. Good Cause Statement**

The Parties anticipate that discovery in this action may require the collection, review, processing, and production of ESI, including but not limited to emails, text messages, electronically stored business records, databases, spreadsheets, financial data, customer and vendor information, pricing information, technical information, internal business communications, and metadata. Certain ESI may contain non-public trade secrets; competitively sensitive commercial, financial, pricing, customer, vendor, technical, or operational information; personally identifiable information; information subject to contractual confidentiality obligations; and information protected by the attorney-client privilege, work-product doctrine, or other legal protections.

Absent protection, disclosure of such ESI beyond the persons reasonably necessary to conduct discovery and litigate this action could cause competitive, commercial, privacy, and other harm to the producing person or entity, including by revealing confidential business practices, pricing, customer relationships, proprietary systems, or private information of third parties. At the same time, the Parties recognize the need for reasonably tailored discovery and for the efficient exchange of relevant ESI.

Accordingly, pursuant to Federal Rule of Civil Procedure 26(c), and after balancing the Parties' need for discovery against the need to protect legitimately confidential information from unnecessary disclosure, good cause exists for the protections set forth in this Order. This Order is intended to facilitate the orderly and

efficient discovery of ESI while limiting protection to information for which a party has a good-faith basis to seek confidential treatment.

**C. Scope and Limitations**

This Order governs the handling, review, production, disclosure, use, and return or destruction of ESI and related information exchanged, produced, obtained, or generated in connection with discovery in this action. This Order applies only to discovery and discovery-related proceedings in this action.

The parties acknowledge that this Order does not entitle them to file ESI containing confidential information under seal; Civil Local Rule 79-5 sets forth the procedures that must be followed and the standards that will be applied when a party seeks permission from the court to file material under seal.

**D. ESI Discovery Procedures**

1. On-site inspection of electronic media. Such an inspection will not be allowed, absent a demonstration by the requesting party of specific need and good cause, or, as allowed by agreement of the parties.

2. Search methodology.

   a. Search Terms and sources. The parties agree that in responding to an initial Fed. R. Civ. P. 34 request, they will meet and confer about methods to search ESI to identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery. Prior to any production, the parties agree to meet and confer to discuss: (i) the identity and role of custodians from which documents will be obtained for the production; (ii) the relevant time period applicable to each request for production; (iii) the identity, scope and format of custodial and non-custodial sources from which documents will be considered for production; and (iv) search terms.

b. Technology Assisted Review ("TAR"). The parties acknowledge the potential benefits of using TAR technology and methodology in assisting in the identification of responsive documents, whether used in combination with search terms or otherwise.

3. Format.

a. General ESI Production Format. All responsive ESI and hardcopy documents, except that ESI which is produced in native format pursuant to Section 3(f), shall be produced as single-page, 300 DPI, Group IV TIFF files or in other reasonably viewable format. To the extent practicable, TIFF files should be assigned a unique name matching the Bates number of the corresponding image. To the extent practicable, Bates numbers and confidentiality designations should be electronically branded on each produced TIFF image. Where images are provided as single page TIFF images, a cross-reference file (such as an OPT image load file) will be provided to delineate images by document.

b. Physical Documents Production Format. In scanning hardcopy documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (*i.e.*, paper documents should be logically grouped). If documents were scanned before this case, however, and are not logically grouped, they may be produced in the format in which they were maintained. In the case of an organized compilation of separate documents (for example, a binder containing several separate documents behind numbered tabs), the document behind each tab should be scanned separately. The parties will make reasonable efforts to group the documents correctly and to correct any grouping failures.

c. Color. Documents containing color may, but need not, be produced in single-page color JPEG format. If an original document contains color necessary to understand the meaning or content of the document, the producing party shall produce a color image and/or native file of the document. Content produced from any website or mobile application shall always be produced in a color image/or native file.

d. Extracted Text. To the extent reasonably possible, extracted text shall be produced from documents that are not redacted. The extracted text shall be in separate document-level UTF-8 TXT files provided in a separate folder.

e. Native Production. Unless otherwise agreed to by the parties, the following four file types that are not easily converted to image format will be produced in native format unless they require redaction: (i) spreadsheet-type files (*e.g.* Microsoft Excel, Corel Quattro, *etc.*); (ii) presentation (*e.g.* Microsoft PowerPoint) and drawing files; (iii) audio/visual/multimedia; and (iv) database files (*e.g.* Microsoft Access).

f. Bates Numbering. Each document image file will be named with a unique number (Bates Number). When a text-searchable image file is produced, the producing party must preserve the integrity of the underlying ESI, *i.e.*, the original formatting, the metadata (as noted below) and, where applicable, the revision history. Any Bates numbering should be consistent across the production, contain no special characters, and be numerically sequential within a given document. If a Bates number or set of Bates numbers is skipped, the skipped number, or set of numbers, should be noted with a placeholder. Any attachments to documents assigned Bates numbers shall be

assigned Bates numbers that directly follow the Bates numbers on the documents to which they were attached.

g. Unitization. If a document is more than one page, the unitization of the document and any attachments and/or affixed notes will be maintained as they existed in the original document. The producing party will produce full families (parent documents and any attachments) for any non-privileged document(s) that hits on one or more of the applicable search terms, regardless of whether the document that hits on the search term(s) is the parent document or an attachment to the parent document.

h. Parent-Child Relationships. The parties agree that if any part of an email or its attachments is responsive, the entire email and attachments will be produced, except that attachments may be withheld or redacted on the basis of privilege (including attorney/client, work product doctrine, or any recognized privilege) and/or nonresponsive sensitive business or personal information, and the relationship between attachments, enclosures, embedded files, and/or exhibits to any parent document shall be preserved. The child document should be consecutively produced immediately after the parent document. Each document shall be produced with the production number for the first and last page of that document in the "BEGDOC" and "ENDDOC" fields of the data load file and with the "BEGATTACH" and "ENDATTACH" fields listing the production number for the first and last page in the document family. If an attachment is withheld on the basis of privilege and/or nonresponsive sensitive business or personal information, the producing party will produce a placeholder (a single-page TIFF slip sheet) indicating that the attachment was withheld on the basis of attorney/client, work product doctrine, or any recognized

privilege, and/or nonresponsive sensitive business or personal information.

i. Date and Time Fields. The Date and Time shall be produced in two separate fields – Format: "12/24/2015" and "11:59 PM".

j. Production Media. The preferred means of producing documents is via secure FTP or secure file share. However, due to large file size or other considerations, documents may also be produced via hard drive if necessary. Physical media should be password-protected before it is produced and delivered by separate means to the intended recipient.

k. Replacement Productions. Any replacement production will be transmitted with a cover letter or email to identify the production as a replacement and cross-reference the BegBates and EndBates of the documents being replaced. If the replacement production is being transmitted by physical media, the media shall include the phrase "Replacement Production."

l. System Files. Each Party will "de-NIST" system and application files, unless they are determined by the producing party to be responsive.

4. De-duplication. The parties may de-duplicate their ESI production globally across custodial and non-custodial data sources. Removal of duplicate documents should only be done on exact duplicate documents (based on MD5 or SHA-1 hash values, at the family level). The initial custodian of a document and any subsequent custodians of deduplicated copies of the document should be listed in the "Custodians" field, with each custodian name separated by a semicolon.

5. Email Threading. Each party, at its discretion, may use industry standard best practices and analytics technology to identify email threads and need only produce the unique most inclusive copy and related family members and may exclude lesser inclusive copies. With respect to an e-mail chain, the parties are

permitted to produce the longest unique or most inclusive chain from lesser emails and the parties do not need to separately produce the lesser-included e-mails unless those lesser-included e-mails either (a) include unique attachments not included in the longest chain, or (b) contain a BCC recipient not shown in the longest unique chain. If a lesser-included e-mail includes a unique attachment, then the lesser-included e-mail must be separately produced with the attachment. A most inclusive email thread is one that contains all of the prior or lesser-inclusive emails, including attachments, for that branch of the email thread. Upon reasonable request, the producing party will produce a less inclusive copy.

6. Metadata fields. The parties agree that the metadata fields listed in **Appendix A** will be produced to the extent they are reasonably accessible and non-privileged.

7. Text Messages, Mobile Application Data and Collaboration Software Programs (Teams/Slack). If applicable sources exist in the possession, custody or control of a party, the parties will meet and confer to discuss the search parameters and format of production of these data types. The parties recognize that there is a wide variety of capabilities available, and it is difficult to assert a standard into a protocol without information as to each party's capabilities.

8. Other Identifiable ESI or Documents. Nothing in Section B relieves a party of its obligations under the Federal Rules of Civil Procedure to search for and produce information and documents responsive to a discovery request propounded under those Rules, subject to valid objections pursuant to applicable law.

**C. Preservation of ESI**

The parties acknowledge that they have a common law obligation, as expressed in Rule 37(e) of the Federal Rule of Civil Procedure, to take reasonable and proportional steps to preserve discoverable information in the parties'

possession, custody, or control. With respect to preservation of ESI, the parties agree as follows:

1. Absent a showing of good cause by the requesting party, the parties will not be required to modify the procedures used by them in the ordinary course of business to back-up and archive data; provided, however, that the parties will preserve all discoverable ESI in their possession, custody, or control.

2. The parties will supplement their disclosures in accordance with Rule 26(e) of the Federal Rules of Civil Procedure with discoverable ESI responsive to a particular discovery request or mandatory disclosure where that data is identified after a disclosure or response is made (unless excluded under Sections (D)(3) or (E)(1)-(2)). For clarity, the parties will not be required to log privileged or work product documents created after the filing of the complaint in this action. Nothing in this Section relieves a party of its obligations under the Federal Rules of Civil Procedure to search for and produce information and documents responsive to a discovery request propounded under those Rules, subject to valid objections pursuant to applicable law.

3. Absent a showing of good cause by the requesting party, the following categories of ESI need not be preserved or collected:

a. Deleted, slack, fragmented, or other data only accessible by forensics.

b. Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

c. Online access data such as temporary internet files, history, cache, cookies, and the like.

d. Data in metadata fields that are frequently updated automatically, such as last-opened dates.

e. Back-up data that are duplicative of data that are more accessible elsewhere.

f. Server, system, or network logs.

g. Electronic data (*e.g.*, email, calendars, contact data, and notes) sent to or from mobile devices (*e.g.*, iPhone, iPad, Android devices), provided that a copy of all such electronic data is automatically saved in real time elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage).

**D. Privilege**

1. Documents or information that are withheld from production, in whole or in part, on the basis of privilege must be disclosed on a privilege log in compliance with the requirements of Federal Rule of Civil Procedure 26(b)(5). The parties shall meet and confer in a good faith effort to reach agreement on the manner in which a privilege log will be generated and the contents of such a log, including: (a) other materials not required to be logged (in addition to those set forth in paragraph D.2); (b) requirements around the logging of email threads; (c) what metadata fields will be used to create the log; and (d) timing of the service of the logs after productions are made.

2. The parties are not required to log (a) privileged or work-product information generated after the filing of the complaint or (b) documents and records that have been redacted to remove PII.

3. Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

4. Pursuant to Fed. R. Evid. 502(d), the production of any documents in this action will not, for the purposes of this proceeding or any other federal or state proceeding, constitute a waiver by the producing party of any privilege or protection

applicable to those documents, including the attorney-client privilege, attorney work-product protection, or any other privilege or protection recognized by law. Information produced in discovery that is known or suspected to be protected as privileged or work product should be immediately returned to the producing party, and its production will not constitute a waiver of such protection.

5. The production of any documents in this action will not constitute a waiver of any arguments by the producing party challenging the future admissibility or use of those documents in this action.

6. Nothing contained in this Order is intended to or shall serve to limit a party's right to conduct a review of documents, ESI or information (including metadata) for relevance, responsiveness and/or segregation of privileged and/or protected information before production.

7. In addition to the terms in this Section, the parties will comply with the terms of a stipulated confidentiality and protective order.

**E. Amendment of Order**

Nothing herein shall preclude any party from seeking to amend this Order in writing for good cause shown, provided, however, that no party may seek relief from the Court concerning compliance with this Order until it has met and conferred in good faith with any parties involved in the dispute.

**F. Discretionary Enforcement**

The Court retains jurisdiction and discretion to interpret, enforce, modify, or terminate this Order and to impose any remedy or sanction it deems appropriate for a violation of this Order, including sanctions permitted by law. Nothing in this Order

limits the Court's inherent authority to manage discovery or to determine whether particular information warrants protection.

### G. Miscellaneous

If the forms of production allowed by this protocol present an undue burden or cost for a Producing Party, the parties shall meet and confer to agree on a reasonable, alternative form of production.

Nothing herein constitutes an admission by any party that any particular category of discovery is appropriate in this action or that there exists producible ESI.

## APPENDIX A

| **DATA FIELD** | **DESCRIPTION** |
|---|---|
| VOLUMENAME | The name of the volume assigned to the production |
| BEGDOC | Beginning Bates number assigned to each document |
| ENDDOC | Ending Bates number assigned to each document |
| BEGATTACH | Beginning Bates number assigned to the group of documents to which the parent document and any attachment documents are associated |
| ENDATTACH | Ending Bates number assigned to the group of documents to which the parent document and any attachment documents are associated |
| CUSTODIANS | The custodian, (or multiple custodians for globally de-duped documents) of a document |
| RECORDTYPE | The type of record (*e.g.*, email, attachment) |
| DOCTYPE | Document type as identified by metadata associated with the native document indicating the application that created the native document (*e.g.*, Google Docs, Microsoft Word 6.0, Gmail, Outlook Email, etc.) |
| EMAILSUBJECT | The subject line of a produced email |

| DATA FIELD | DESCRIPTION |
|---|---|
| DOCAUTHOR | The Author of a document |
| FROM | The "From" line of a produced email |
| TO | The "To" line of a produced email |
| CC | The "CC" line of a produced email |
| BCC | The "BCC" line of a produced email |
| DOCDATE | Date sent or Date received or Date last modified or Date created (In this hierarchy) |

[SIGNATURES ON FOLLOWING PAGE]

IT IS SO STIPULATED:

Dated: September 15, 2026

**FOLEY & LARDNER LLP**

*/s/ F. Phillip Hosp*
F. Phillip Hosp
Attorney for Plaintiff
DAIMLER TRUCK FINANCIAL SERVICES USA LLC

Dated: September 15, 2026

**WHITE & CASE LLP**

*/s/ Sean Gorman*
Sean Gorman
Attorney for Defendants
VANGUARD NATIONAL TRAILER CORPORATION AND CIMC REEFER TRAILER, INC. A/K/A VANGUARD REEFER TRAILER, INC.

**Attestation Pursuant to Local Rule 5-4.3.4(a)(2)(i)**

Pursuant to Local Rule 5-4.3.4(a)(2)(i), I attest that the other signatory listed, and on whose behalf this filing is submitted, concurs in the filing content and has authorized this filing.

DATED: September 15, 2026

*/s/ F. Phillip Hosp*
F.Phillip Hosp

**FOR GOOD CAUSE SHOWN, IT IS SO ORDERED.**

DATED: September 16, 2026

Karen L. Stevenson
Honorable Karen L. Stevenson
Chief Magistrate Judge